## CITY OF LAGRANGE V. H. C. PIERATT ET UX.

No. 8128. Decided November 10, 1943.
Rehearing overruled December 8, 1943.
(175 S. W., 2d Series, 243.)

24

*Theo. W. Lueders*, City Attorney, and *Edward H. Moss,* both of LaGrange, for petitioners.

*C. C. Jopling,* of LaGrange, for respondents.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the District Court of Fayette County, Texas, by H. C. Pieratt and wife against the City of LaGrange, to recover damages consisting of the loss of profits from Pieratt's business as owner and operator of a gasoline filling station, situated on a lot abutting on State Highway No. 71. Such highway at the point in question here was also a public street of the City. Pieratt's loss was occasioned by the temporary obstruction of such highway for several months, while it was being widened, paved, and otherwise reconstructed and improved by the State Highway Department, acting under authority of a contract with the City. Under this contract the State Highway Department did the work and paid the cost of the improvement. For the purposes of this opinion we will assume, without deciding, that the City lawfully assumed direct and original liability for all damages accruing to abutting property owners. This contract is purported to have been made under and by authority of Article 6673b Vernon's Annotated Civil Statutes, Acts 1939, 46th Leg., p. 581. Trial in the district court, before the court without the intervention of a jury, resulted in a judgment for the City. This judgment was reversed by the Austin Court of Civil Appeals, and this cause remanded to the district court for a new trial. 171 S. W. (2d) 377. The City brings error.

It appears from the record before us that the State Highway Department desired to pave and improve the part of Highway No. 71 here involved. As already shown, such part was one of the public streets of the City of LaGrange. The City passed

an ordinance whereby the Mayor was authorized to execute a contract on behalf of the City with the State Highway Department. By the terms of this ordinance the State Highway Department was authorized to pave and otherwise improve this street project in the manner, at the location, and according to a contract attached to such ordinance and made a part thereof. The contract provided by the ordinance was duly entered into by the City and the State Highway Department. As we understand this record, this contract showed the character of these improvements, and same were known, or could have been known, to Pieratt during all the time here involved.

The plans for the improvement of this street called for widening it, and such widening project called for the taking of a part of the land which Pieratt then owned, and on which he was operating a filling station. The City entered into negotiations with Pieratt to purchase such land, and made him an offer therefor. Pieratt refused such offer, and the City filed statutory condemnation proceedings in the County Court of Fayette County. The county court appointed commissioners to hear and determine the damages accruing to Pieratt. We assume that such commissioners were clothed with the power and charged with the duty of determining all lawful damage, direct and consequential, accruing to Pieratt on account of the condemnation of this land.

The commissioners set this matter for hearing on a certain date. Pieratt waived notice, and a hearing was had; at which all parties appeared and participated. The commissioners then duly made their report. By the terms of this report Pieratt was allowed damages as follows: "$100.00 moving house, $100.00 moving tanks, $20.00 rebuilding toilet, $50.00 for lights, $150.00 for placing gravel, and $100.00 for land and damages, * * *."

The above-described commissioners' report also recites that:

"And on October 7th, 1940, upon the day and at the place so appointed for hearing, and said parties appearing in person and by attorneys and offering evidence, we proceeded fully to hear evidence as to the value of property sought to be condemned, to wit: Mabel Pieratt, (Description same as in preceding exhibit, page 16) and as to damages which will be sustained by the owner, by reason of such condemnation, * * *."

The above report was duly returned to and approved by the county court. It was never appealed from by either party, and the damages therein assessed have been duly paid to and ac-

cepted by Pieratt. The date of the above report is October 8, 1940.

The record does not inform us as to just what claims for damages were made by Pieratt before the commissioners. The report of the commissioners, which was approved by the county court, and which was thereafter accepted by Pieratt by accepting the amount of damages therein awarded to him, and not appealing therefrom, shows that the commissioners considered and allowed damages for the value of the property taken from Pieratt, and that such commissioners further took into consideration, in assessing such damages, *"damages which will be sustained by the owner by reason of such condemnation, * * *."* As we interpret the above report, it shows, as a matter of law, that the commissioners considered and awarded compensation for all. elements of damage, direct and consequential, which the law contemplates in such a proceeding.

The work of improving this street was done by a contractor, substantially in accordance with the contract submitted to the City by the State Highway Department. This contract was attached to the ordinance authorizing the Mayor to enter into it on behalf of the City, and must have constituted a public record. There is no contention that there was any undue delay in performing the contract, or that the contractor did anything unusual, unreasonable, or negligent in its use of the street while improving it.

On April 10, 1941, several months after the return of the report of the commissioners in this condemnation proceeding, the attorney for Pieratt wrote the City a letter. In this letter Pieratt informed the City that he would demand additional damages for loss of profits from his filling station while the work of improving this street was in progress. In this letter he informed the City that his loss of profits would be about $7.50 a day, and that he believed that this damage would extend over a sufficient period to cause him damages in the sum of $1,000.00. In this letter the City was given to understand that Pieratt did not consider that his damages for loss of profit from his filling station had been included or paid for in the condemnation proceedings.

Pieratt testified as a witness in his own behalf at the trial. Among other things, he testified that he attempted to conduct his filling station all during the time that this improvement was going on, except several days when he was moving his pumps, etc., back from the condemned land; and that while such street

improvement was going on his filling station business was greatly reduced, and at times entirely cut off. Pieratt made a sufficient proof as to the amount of business he lost during the construction,—which construction lasted several months. Also, Pieratt testified that since this improvement was completed his business has been gaining. Pieratt also testified that the commissioners allowed him, and the City paid him more than he asked at the condemnation, and that he accepted the amount allowed by the commissioners in full settlement of what the City was due him at that time.

Our laws regarding eminent domain make provision for two distinct condemnation situations: (a) the taking of the whole of a tract of land, and (b) the taking of only a part. In this case we are dealing with the taking of a part of a tract.

■ Damages in condemnation proceedings are limited to damages to property. Property must either be taken or damaged. County of Harris v. Gehart, 115 Texas 449, 283 S. W. 139; 16 Tex. Jur., p. 976, sec. 300.

For it to be considered that damages are to property, it is not necessary that such damages are to be measured by the extent of the injury to the physical property itself. "A right of recovery is established by proof of injury to some right of property, and the damages are measured by the extent of the injury to that right. Thus a business is property, and the reasonable damages for interference with the access to business property may be measured * * * by the loss of profits." 16 Tex. Jur., pp. 976-7-8, and authorities there cited; Hart Bros v. Dallas County (Com. App.), 279 S. W. 1111.

■ In a proceeding for the condemnation of a part of a tract of land for street or road purposes, it is presumed that the amount of damages allowed covers all lawful elements of damages, whether direct or consequential, that could reasonably have been foreseen and determined at the time of condemnation; and where a part of a tract of land is condemned for street or road purposes, the owner cannot recover in a subsequent proceeding for condemnation damages to the remainder of the land which he ought reasonably have foreseen and presented in the condemnation proceeding. State v. Brewer et ux., 141 Texas 1, 169 S. W. (2d) 468. In this connection, we think that where a part of a tract of land is condemned for street or road purposes, and the owner claims consequential damages to the land left, on account of the loss of profits arising from an established business being conducted thereon, while the road or street improve-

ments are in progress, such claim may, and should be presented at the condemnation proceeding, if it is of such a nature that it could reasonably have been forseen and determined at the time. State v. Brewer, supra; 16 Tex. Jur., p. 954, and authorities there cited.

■ It is the law that where a breach of a contract or a tort results in damages to an established business, in the form of loss of profits, which would have been derived therefrom absent such breach of contract or tort, the owner of such business may recover damages from the party causing such loss, measured by the amount of such loss of profits. 28 Tex. Jur., p. 215, sec. 114, and authorities there cited. We have already shown that the same rule applies in condemnation proceedings. In such proceedings an established business is property, and damages thereto in the form of loss of profits should be taken into consideration in such proceedings.

■ Profits which would have been earned by an established business, absent any interference therewith, are in their very nature more or less conjectural, uncertain, and speculative, but this does not deprive the party injured by such interference of his right to recover. In other words, the difficulties which may lie in the way of making proof will not defeat a recovery. It is not necessary that damages in the form of loss of profits should be susceptible of exact calculation. All that is required is that they be ascertained with a reasonable degree of certainty. 13 Tex. Jur., p. 207, sec. 108, and authorities there cited.

Measured by the above rules, we think that Pieratt had a perfect right to present his expected loss of profits, as an element of consequential damages to his property, in the condemnation proceedings above mentioned. Since he had such right, we think it follows, as a matter of course, that it was his duty so to do. It is true that at the time of such condemnation proceedings Pieratt did not know, and could no have known, exactly or to a certainty the amount of profits he would lose. At that time they would have been to some extent uncertain and speculative, but such fact would not have barred his right to present them. In this connection, the proof of his loss of profits, made after the completion of this road improvement, left the matter somewhat uncertain and speculative; but this did not render such proof insufficient. We here call attention to the fact that this record shows that Pieratt, knew, or could have known, the character of this street improvement at the time of these condemnation proceedings; and, furthermore, at such

time he knew, or could have known, the terms of the contract under which it was to be consummated.

Plaintiffs seem to recognize the fact that they were called upon to present in the condemnation proceedings all claims for consequential damages which could then have been reasonably foreseen and determined. In this regard, their petition in the district court alleges that this claim for damages could not have been presented at any time before this road or street improvement was completed, because before such time it would "* * * have been impossible to know or ascertain the amount of damages they would actually suffer * * *," and because before such time "* * * they were unable to present their claim for damages in a specific amount * * *." In our opinion, the record in this case does not support these allegations. As already stated, the amount of damages such as these is always more or less uncertain, conjectural, and speculative; but that does not prevent their presentation and adjudication in a condemnation proceeding. As to such damages, the law does not require that the amount of damages be certainly or definitely proved.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court is affirmed.

Opinion delivered November 10, 1943.

Rehearing overruled December 8, 1943.