MRS. BAIRD'S BREAD COMPANY ET AL V. ARTHUR KEITH HEARN

No. A-6162. Decided March 27, 1957
Rehearing overruled April 24, 1957
(300 S.W. 2d Series 646)

160

*Justice & Justice,* of Athens, *Ramey, Calhoun, Brelsford, Hull & Flock* and *Jack W. Flock,* of Tyler, for petitioners.

*Jack Y. Hardee,* of Athens, *Yarborough, Yarborough & Johnson* and *Donald V. Yarborough,* of Dallas, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Our petitioners, who successfully defended this automobile collision-personal injury suit in the trial court, complain here of the action of the Court of Civil Appeals in ordering a new trial because of: (a) conduct of an unnamed juror in "testifying" favorably to the petitioners-defendant in the jury room, and (b) exclusion by the trial judge of evidence tendered by our respondent (plaintiff) to rebut inferences from questions directed by petitioners' counsel to a disappointing witness of respondent whom the latter was seeking to impeach. 295 S.W. 2d 689. We hold that neither ground of reversal was proper.

The vehicles involved were a passenger car driven by Mrs. Jack Hearn, with the respondent-plaintiff, who is her infant son, as a passenger, and a bread delivery truck owned and operated by the petitioner-defendant company. The time was about 8 A.M., and the place the intersection of Mitcham and Martin Streets in the City of Malakoff. The Hearn car was proceeding eastwardly on Mitchem and the truck northerly on Martin, the truck thus being at the right hand of the Hearn car as both approached the intersection. Just previously the truck had been delivering bread in Malakoff and had last stopped at a point a few blocks to the northwest of the collision intersection. It had then proceeded south, along a street lying a block or two west of and paralleling Martin Street, to a street running parallel to and a block south of Mitcham Street, proceeding thence eastwardly to Martin Street, into which latter it turned left or in a northerly direction, proceeding thence one block to the point of collision. The truck was equipped with a speed governor set at 48 miles per hour.

The case for the respondent-plaintiff rested on various alleged acts of negligence of the truck driver, including excessive speed (forty-five miles per hour), and also on allegations of discovered peril. The case for the petitioner-defendant rested on similar acts of Mrs. Hearn, including her failure to yield the right of way, each of which negligent acts was asserted to be the *sole* proximate cause of the accident. The defense of unavoidable accident was also made. There was evidence pro and con on all of these issues, including the speed of the truck, but

no further proof about the governor on the truck than the fact that there was one and that it was set as above stated.

The jury found the accident not to have been unavoidable, and that the respondent-plaintiff suffered injuries compensable at $10,000, but otherwise answered favorably to the petitioners-defendant. It found that some of the acts charged against the truck driver, such as driving too fast, were not committed at all and that others, while committed, were not negligent. It found Mrs. Hearn to have been free of negligence in one respect, but guilty in several others, of which latter the failure to yield the right of way to the truck was found to be the *sole* proximate cause of the accident, the others being expressly found to be *not* such a cause. The trial court judgment for the petitioners-defendant thus may be taken to rest on both the absence of negligence on the part of the truck driver and the accident being due solely to the negligenc of Mrs. Harn.

We take occasion to observe at this point that the only thing approaching an abnormality in the entire and somewhat complicated verdict of forty-eight special issues, with its various convenient opportunities for conflicting and undiscriminating answers, was that, after answering that the truck driver did *not* fail to keep a proper lookout, the jury disregarded the condition preceding the next issue and answered it to the effect that "such failure, if any" was not a proximate cause of the accident.

■ The point of jury misconduct relates only to the hereinafter mentioned statement of a single juror. It was the subject of a hearing on the respondent-plaintiff's amended motion for new trial, in which three jurors testified at the instance of the respondent-plaintiff and seven on behalf of the petitioners-defendant, the motion being overruled without findings. For the respondent-plaintiff, the jurors Hines and Weeden both testified in effect that, during the deliberations of the jury, some other juror said that he had personally driven a truck equipped with a governor and that accordingly he did not believe the truck in suit was going over thirty miles an hour. They testified further that the statement "influenced" them, without specifying in what particular or to what extent. Juror Lambright testified that something was said on the general subject but he could not remember what it was. None of these witnesses gave any clue to identification of the juror making the offending statement. The seven jurors called by the petitioners-defendant all denied hearing any such statement, but several of them also stated—

what may readily be believed—that, during the several hours the jury was out, it occasionally broke up into small groups which talked apart from the others.

There was no proof whatever as to the status of the deliberations at the time the offending statement was made or, for that matter, at what chronological point in the deliberation period it occurred. The statement is in nowise related in point of time or otherwise to the answer of any particular issue or issues, nor is there anything remotely approaching an account of the whole course of the deliberations.

Against the holding of the Court of Civil Appeals that prejudicial misconduct occurred, the petitioners-defendant argue that on this record: (a) the trial court must be presumed to have found, in overruling the motion for a new trial, that the alleged statement of the unnamed juror was not in fact made, the evidence being such as to justify such a finding; (b) the statement did not amount to material misconduct; and (c) if it was material misconduct, the burden of the respondent-plaintiff under Rule 327, Texas Rules Civ. Proc., to show harm therefrom has not been discharged. See commentaries and cited decisions in Franki, "Vernon's Annotated Texas Rules," Vol. 2, pp. 466 et seq.; McDonald, "Texas Civil Practice," Vol. 3, Sec. 14.16, p. 1252, and cases cited in Note 19 thereunder. Assuming for the purposes of this opinion that contentions (a) and (b) are without merit, we find (c) to be well taken.

Obviously seven of the jurors were in nowise affected by the statement, not having heard it. As to the two who did not testify, we cannot presume that they were affected. As to the remaining three, being those called to testify by the respondent-plaintiff, one did not even remember what was said, and the other two simply testified as to their own subjective reactions. Such testimony being the result of a direct inquiry into the mental processes of the jurors concerned, cannot be considered by "trial or appellate courts * * * in determining the probable effect of misconduct upon the verdict of the jury;." Putman v. Lazarus, 156 Texas 154, 293 S.W. 2d 493, 495, and decisions therein cited.

Eliminating, therefore, the subjective evidence of the two jurors mentioned, and looking only to the rest of the record for indications of a probability that these jurors, or either of them, were caused by the offending statement to vote differently than they would otherwise have done on one or more issues vital to

the judgment, we fail to find any such indication. As previously suggested, the verdict itself indicates a rather unusually intelligent and conscientious effort on the part of the jury to apply the evidence to the many different questions propounded and to follow the instructions of the judge, and there is no proof as to the time relationsship of the offending statement with this or that particular vote or other development in the course of the deliberations, from which a probable effect on a material issue might be inferred.

It is not argued that the statement was so unusually impressive as of itself to entail the inference of probable harm, but, if such a theory were urged and were generally permissible, it would not be persuasive here. Obviously the statement was not inflammatory or calculated to inject an improper motive or bias in favor of the petitioners-defendant against the respondent-plaintiff. It was brief, general and not particularly emphatic in terms. Its bearing was only indirect even on the issue of speed, since the respondent-plaintiff did not contend that the truck was going faster than the figure at which the governor was set, and since there was no evidence one way or another about the reliability of governors or their effect, if any, upon acceleration or other aspects of driving. Moreover, as already observed, the trial court judgment for the petitioners-defendant does not necessarily rest on the answers acquitting the defendant of excessive speed and other alleged acts of negligence, but may also be sustained on the findings that the *sole* cause of the accident was the negligent failure of Mrs. Hearn to yield the right of way. The relevance of the governor to this latter issue was rather remote and inferential. Under these circumstances the bare statement itself is not persuasive evidence that it probably controlled the votes of those who heard it, as to the issues of either speed or right of way. Indeed, as to the latter issue, the more normal inference would be that the hearers were probably not influenced.

■ There being no competent evidence affirmatively showing that, as to any juror or jurors, the answer to a vital issue was influenced by the offending statement, and, to the contrary, there being some competent indication in the record that the verdict was not so influenced, the burden of the respondent-plaintiff to show probable prejudice has not been met. See Franki and McDonald, both supra. The various circumstances above discussed readily distinguish the case, in our opinion, from City of Houston v. Quinones, 142 Texas 282, 177 S.W. 2d 259. In the latter the offending statement of the juror in

question was quite directly and highly relevant to the first and principal liability issue before the jury. Moreover, the timing of the statement with reference to the progress of the jury deliberations was shown and indicated a probable effect on the answer to the vital issue in question.

■ The second ground of reversal taken by the Court of Civil Appeals—improper exclusion of evidence by the trial court— arose from the following proceedings: The witness Sherman was called by the respondent-plaintiff, but, testifying that he could not estimate the speed of the truck at all, when he had evidently been expected to estimate it at forty-five miles per hour, he was sought to be impeached by means of a long-hand statement, which he had previously signed at the instance of co-counsel for the respondent-plaintiff. Opposing counsel, being not displeased with the witness' main testimony, then asked him in effect if certain portions of the impeaching statement, indicating excessive speed of the truck, had been *written* by the witness himself, to which the witness replied that they had not been. There had been nothing in the record up to that point as to who actually wrote the statement. Impeaching counsel, apprehending an inference from the above questions and answers to the effect that his co-counsel taking the statement had inserted unauthorized matter into it, the latter was called to testify in rebuttal of the supposed inference, and, on objection, his testimony was excluded.

The only relevance of the excluded testimony being to defend the written statement, which latter, in turn, if competent, was competent—and intended—only for impeachment of the witness who had signed it, the excluded testimony was altogether collateral to the real issues in the case. Furthermore, its importance is quite doubtful even as to the bare matter of impeachment, considering that the attack on the statement, if it was an attack, was only by way of a rather obviously defective inference, whatever may have been the intent of counsel asking the questions. In addition, at another point in the proceedings, the equivalent of the excluded evidence was actually admitted. Under these circumstances, we are unable to say that the error, if any, is shown to have probably affected the verdict. Rules 503 and 434, Texas Rules Civ. Proc.

The foregoing conclusions require the judgment of the Court of Civil Appeals to be reversed and that of the trial court affirmed. It is so ordered.

Opinion delivered March 27, 1957.

Rehearing overruled April 24, 1957.