Royal C. EUBANK et al., Appellants,

v.

STATE of Texas, County of Ellis, Appellees.

No. 3655.

Court of Civil Appeals of Texas.

Waco.

Sept. 10, 1959.

Rehearing Denied Dec. 31, 1959.

McKool & Bader, Dallas, Warwick H. Jenkins, Waxahachie, for appellants.

Bruce Allen, County Atty., Milton Hartsfield, Waxahachie, for appellees.

TIREY, Justice.

This is a condemnation case. The Court submitted three issues; they are, absent the burden of proof clause, substantially as follows:

(1) What do you find was the market value of the land taken by the plaintiff at the time such land was condemned on June 16, 1956, considered as severed land?

To which the jury answered: $7,916.75.

(2) What do you find was the market value of defendants' land, exclusive of and not including the land condemned, immediately before that portion of land condemned was taken by the plaintiff?

To which the jury answered: $29,688.50.

(3) Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which the portion of land has been condemned, and taking into consideration the uses to which the portion condemned is to be subjected, what do you find, from a preponderance of the evidence, was the market value of the remainder of defendants' land immediately after the taking of the portion condemned by the plaintiff?

To which the jury answered: $21,605.25.

The decree recites that the sum of $15,-346.60 was awarded to the defendants by the special commissioners, and that said sum was paid into the registry of the court;

that the defendants had received the amount paid into the registry of the court, and found the difference in that sum and the verdict to be $653.40, and decreed that defendants were entitled to recover such sum with legal interest from June 16, 1956, and taxed costs against Ellis County; that the State shall have fee simple title to part of the land condemned and certain easements in other parts, and describes each by metes and bounds, and the decree in this respect is not assailed. All parties excepted to the decree and gave notice of appeal to this Court. Only defendants perfected their appeal.

The judgment is assailed on 15 Points. Points 1 to 7 inclusive are grouped under one argument, and we will likewise treat them. These Points are substantially to the effect that the Court erred: (1) In submitting Issues Nos. 1, 2 and 3, because this constituted a submission of all of the different takings of the property in one issue and did not give the defendants a proper submission of all of the issues as fee title, permanent easement and temporary working easement; (2 to 7 inclusive) In denying and over-ruling defendants' requested Issues Nos. 2, 3, 4, 5 and 6.

A statement is necessary. This suit is for additional right-of-way for highway No. 77. The appellees sought 14.190 acres, more or less, out of what they designated as tract 1, and described it by metes and bounds. They asked for a permanent easement to be acquired on land set out in tract No. 2, parcel No. 1, and this they described by metes and bounds. They sought this tract for the purpose of operating, constructing and maintaining permanent channels in and along and upon and across the land with the right and privilege at all times of having ingress and egress and regress to the premises for the improvements. The petition also asked that the State and its assigns be vested with title and the right to take without any additional compensation any stone, gravel or caliche, or any other stone or minerals under said land, ex-

cept oil and gas, and supplies in the construction and maintenance of the highway system of Texas. The petition also sought temporary easements to be used for temporary construction out of the third tract, No. 3, containing parcel 1 and parcel 2 and parcel No. 3, and described the land sought by metes and bounds. The petition further stated that the temporary easements used for construction would expire when the railroad traffic was returned to the present line and all temporary construction within the area would be restored and fences replaced, and that such restoration would be at the expense of the State. Much testimony was tendered. The Statement of Facts contains 594 pages. There are many exhibits, including sketches and maps. We overrule each of the foregoing assignments because we are of the view that the testimony tendered does not bring appellants within the doctrine announced by the Supreme Court in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, but on the contrary, we think the record brings the value and the damage questions under the Rule announced by the Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, (Tex.Com.App., opinion adopted). See also opinion on Motion for Rehearing, 89 S.W.2d 919 at page 980.

■ In appellants' exceptions to the Court's charge they pointed out that the Court did not include the improvements located on the property, and in connection with such objection submitted their requested Issue No. 1, which was: "From a preponderance of the evidence what do you find was the reasonable cash market value of the 14.190 acres of land with all the improvements located thereon taken by the plaintiff at the time such land was condemned in Ellis County, Texas, on June 16, 1956, considered as severed land?" They also objected to the Court's Issue No. 2, for the reason that it is not a proper submission of the issue in question, and in connection therewith they submitted their Issue No. 2, in place of Issue No. 2, of the Court's main charge, appellants' Issue No.

2, being: "From a preponderance of the evidence, what do you find was the reasonable cash market value of the remainder of defendants' land exclusive of and not including the 14.190 acres taken in fee with all of the improvements located thereon immediately before that portion of land condemned was taken by the plaintiff on June 16, 1956, in Ellis County, Texas?" We think the foregoing contentions are contrary to the Rule stated by the Supreme Court in State v. Carpenter, supra, because the Court said in that cause: "It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose." Under the foregoing Rule appellants had a right to prove the value of the improvements on the strip taken, and also had an opportunity to place such stress on the value of the improvements testified to by the witnesses, and to urge such values upon the jury. Much testimony was tendered as to the value of the land and the improvements thereon. Accordingly, we overrule the foregoing contentions.

■ Appellants also urge that the Court erred in refusing its special instruction No. 1; it is as follows: "You are instructed that the term 'market value' is the price the property will bring when offered for sale by one who desires to buy but is under no necessity of buying, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future." The Court, in its main charge, followed the definition suggested by the Supreme Court in State v. Carpenter, supra, and we think it is sufficient. The appellants' requested instruction follows the language used by our Supreme Court in State v. Cannizzo, supra, but as we understand

the record here, the testimony tendered does not bring appellants' cause within the peculiar situation that existed in the Cannizzo case, supra, and the Court did not err in refusing such instruction.

■ Appellants' requested Issue No. 4, is: "What do you find from a preponderance of the evidence was the reasonable cash market value in Ellis County, Texas, on June 16, 1956, of the 1.75 acre strip of land considered as severed land covered by the permanent easement involved herein immediately before the taking of said easement?" Appellants' requested Issue No. 5, was: "What do you find from a preponderance of the evidence was the reasonable cash market value of the 1.75 acre strip of land considered as severed land covered by the permanent easement involved herein in Ellis County, Texas, on June 15, 1956, immediately after the taking of said easement?" Special Issue No. 6 was: "What do you find from a preponderance of the evidence was the reasonable cash market value for the 1.742 acre strip of land taken by the plaintiff at the time such land was condemned on June 16, 1956, in Ellis County, Texas, for a temporary working easement, considered as severed land?"

We have reviewed this testimony very carefully, and we find the case was fully developed with reference to each of the easements sought by the State and testimony was tendered by the parties as to the values, and as to the damages under appropriate rulings of the Court. And, while the Charge did not specifically point out any distinction between the property that was taken for easements and that which was taken in fee, we cannot say that the failure of the Charge in this respect was prejudicial in anywise to the appellants' cause of action. The jury was not concerned with the legal difference in the title to the easements and the fee title, but was concerned only with assessing the value of the property taken and resulting damages suffered by the appellants to the remain-

ing tract as such damages related to the easements and the fee title, and we cannot say that as a matter of law that the appellants were harmed in this respect. Accordingly, the foregoing contentions are overruled.

■ Appellants' 11th Point is to the effect that the Court erred in refusing to permit the witnesses Ginch, Evans, Leatherman and the Eubanks to testify as to the reasonable market value of the pecan trees in question. A statement is necessary. The evidence is without dispute that there were 192 pecan trees on part of the land that was condemned, and evidence was tendered in detail as to the varieties, sizes and ages of these trees, and some testimony was tendered as to the income from the orchard as a whole, which included a little more than 500 trees. Appellant, Royal Eubank, testified to the effect that they had received approximately $6,600 a year from the whole of their pecan orchard containing approximately 503 trees since 1941; that the only expense they had for gathering such crop was 5¢ per pound; that both appellants testified to the effect that the value of the pecan land per acre was $2,500, and their witnesses, Evans and Leatherman, testified to the same effect. It appears that 27 witnesses testified in this cause, and that 19 gave testimony relating to the issues of values and damages. This testimony greatly varied; the lowest we find of the value of the land taken was fixed at $171 per acre, and the value before the taking to be $166.04 per acre, and the value of the remainder after taking to be $203.30 per acre. The value of the land taken and all questions relating to damage were fully developed, and our view of the record is that the only limitation made upon the appellants (here complained of) in proving their damages was the Court's ruling that prevented them from tendering testimony as to the value of the individual trees on the strip taken. One witness testified to the effect that one year the income from paper shell pecans was from $13,000 to $14,000, but no effort was made

to show what amount of income was received from the pecan trees on the strip taken for any one year. While the witness, Ginch, was testifying appellants offered to prove by such witness the value of each of the 192 trees on the strip taken. The Court sustained objection to this testimony and permitted the appellees to perfect their bill. Such witness testified on the bill to the effect that the native trees were of the market value of $150 each, and that the improved variety were of the market value of $300 each. The Court refused to permit such testimony, and refused to let appellants perfect their bill at the time each witness was tendered, but told appellants that they could do so after the evidence was closed and while the jury was considering their verdict, but appellants forgot or failed to perfect their bill. As we understand the record the Court grounded its action in excluding such testimony tendered on the Rule announced by the Supreme Court in Texas & St. Louis R. Co. v. Matthews, 60 Tex. 215. In that case the landowner sought to recover damages against the railroad for its action in taking his land without condemning it and taking such land without his consent and constructing a railroad through it. Our Supreme Court, in discussing this matter said: "Our statute, in cases where the land is condemned under it, provides that the commissioners shall estimate the injuries sustained and the benefits received by the owner as to the remaining portion of the real estate, and the extent of such increase or diminution, and shall assess the damages accordingly. * * * In estimating the value of his property, no separate account should be taken of the trees cut from the land, but the value of the land taken with the trees growing on it should be assessed. They are part of the realty and should not be separated from it in arriving at the value of the land." So far as we have been able to find the Supreme Court has not changed the Rule here stated, and our Courts of Civil Appeals have consistently applied the foregoing Rule in condemnation cases. See

Fort Worth & D. S. P. Ry. Co. v. Gilmore, Tex.Civ.App., 2 S.W.2d 543, N.W.H.; Kennedy v. City of Dallas, Tex.Civ.App., 201 S.W.2d 840, N.R.E.; Taylor v. City of Austin, Tex.Civ.App., 291 S.W.2d 399, N.R.E.; See also 2 Lewis on Em.Dom. (3d Ed.) para. 724. Appellants' 11th Point is overruled.

Point 9 is to the effect that the Court erred in permitting appellees to prove that appellants had sold $75,000 of concrete mix for the building of the highway by virtue of this condemnation. This point has given us much concern and it requires a statement. Evidence was tendered to the effect that appellants operated a plant for the manufacture of concrete mix, and that it was located on their property near the strip condemned. The following testimony of one of the owners is pertinent:

"Q. And by reason of the expressway going by there, you sold lots of concrete to the contractors, didn't you? A. Yes, Sir, I sold them some.

"Q. Well, you were too busy to sell to anybody else? A. No, sir."

Appellants objected to this testimony on the ground that it was irrelevant, immaterial, and that it had no bearing on the lawsuit, which the Court overruled.

"Q. Mr. Eubank, how many yards of concrete would you estimate that you sold to the contractor, if you know?"

Appellants objected to the question on the ground that it was irrelevant, immaterial and had no bearing on the lawsuit, which objection the Court overruled.

"* * * The Court: The question substantially was how much concrete did you sell? A. It would be—I haven't figured it. It would be a guess. Four or Five Thousand yards, the best I remember.

"Q. Is that all you sold for bridges and all? A. I sold the bridges and the culverts, but I don't remember how many yards it was.

"Q. Sell any more? A. Not to the highway.

"Q. That is what I mean, to the contractors. A. No, Sir.

"Q. Is that the amount that you sold for bridges and culverts? A. The best I remember.

"Q. How much did you get a yard for that? A. I have different prices for it.

"Q. Well, how much did you get a yard for this particular amount that you sold the contractors? A. I had to sell that very cheap in order to get it.

"Q. How much was it, Mr. Eubank? A. I sold some of it for eleven fifty and some of it for twelve fifty, and I haven't been paid for it.

"Q. But you will be paid for it. You expect to be paid? A. There is no indication that I will be. They are trying to beat me out of it, the contractors.

"Q. Would you say that it ran in the neighborhood of $75,000.00?"

Appellants objected to this testimony on the ground that it was irrelevant and immaterial.

" * * * The Court: I overrule the objection. A. Somewhere in that neighborhood."

■ In Volume 1, Section 25, of McCormick and Ray, we find this statement of the Rule: " * * * If there is any valid ground for the exclusion of the evidence the Court assumes (in the absence of a request by opposing counsel or the judge for a more specific objection) that it was apparent to the trial judge and that he placed his ruling on that ground. Experience reveals, however, that most general objections are summarily overruled by trial judges, and that these rulings are sustained on appeal. The objecting party normally will not be permitted to complain on appeal by assigning a valid ground which he did not urge at the time of objection. This well-established principle is subject to certain exceptions. (1) If the ground of exclusion was obvious to judge and opposing counsel, the failure to specify it is not fatal. (2) Where it clearly appears on the face of the evidence that evidence is not admissible for any purpose, the general objection will be deemed sufficient." Citing a long list of cases. In Cheatham v. Riddle, 8 Tex. 162, Justice Wheeler, speaking for the Supreme Court, said: " * * * that a party objecting to evidence must, in general, state the ground of his objection. In taking his bill of exceptions the party excepting must, it has been said, 'lay his finger on those points which arise either in admitting or denying evidence.' * * * But to this rule there may be exceptions depending on the character of the proposed evidence. It may be so manifestly incompetent to prove the proposed fact, or its inadmissibility may be so apparent, that it will be sufficient to object generally to its introduction." See also McEwen v. Texas & P. Ry. Co., Tex.Civ.App., 92 S.W.2d 308, N.W.H. and cases there cited. Appellants had been operating their plant for some time before the condemnation, the exact time not given. We think it is obvious that whether the appellants made a profit or had a loss in the operation of this business on their property near the strip condemned was inadmissible, and such testimony should not have been admitted, and such admission constitutes reversible error. But the appellees say in their argument substantially that since Waxa-Mix is the business owned by appellants, and is located on the remainder of the land at the west side of the expressway, and since only a part of appellants' property was condemned, they owning all the property in question, including the Waxa-Mix located on the remainder, could offer evidence as to the loss of profits from the Waxa-Mix for the purpose of showing decrease in value to the remainder of the land. Citing City of Dallas v. Priolo, 150 Tex. 423, 242 S.W. 2d 176; Hart Brothers v. Dallas County, Tex.Com.App., 279 S.W. 1111; City of La

Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243; Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719. Conversely, appellees would be permitted to show gross profits from said Waxa-Mix for the purpose of showing increase in the value of land by reason of the construction of said highway. We are not in accord with the foregoing views. We think a study of the cases cited by appellees show that the factual situation is easily distinguished from the situation here before the Court. There is no evidence here that the building of the expressway in anywise interfered with the appellants in the operation of their concrete mixing plant. Needless to say whether appellants were wise or unwise in the management of their business in selling their product could have no effect whatever on the value of the land taken, and we see no reason why it should increase or decrease the cost of the land taken, or increase or decrease the cost of the land remaining, because there is an absence of testimony to the effect that this business was interfered with by the building of the expressway. It is true that Mr. Eubank testified to the effect that there was some doubt that he would be paid for the concrete mix, and that the contractor was trying to beat him out of it, but we do not think that such statement cured the error. Moreover, we think the error was intensified by counsel for appellees' argument to the jury (appellants' 15th point) wherein he said: "There was some concrete that was sold at something like $75,000.00. Mr. Eubank tried to hurry up and get it in, said he hadn't been paid yet. I will say this, the contractor is under bond. He will collect his debt if he has one because the man has to be under bond. He will get that for whatever it is worth. He didn't tell us how much he made on it. I don't know. Anyway, this land, we say, has enhanced in value as a result of the expressway going through there." We think the foregoing argument should not have been made to the jury, and that it greatly intensified the error of the Court in admitting the testimony, and that these errors will require that this cause be Reversed and Remanded. We think the Rule announced by the Supreme Court in Smerke v. Office Equipment Company, 138 Tex. 236, 158 S.W.2d 302, is still the Rule in Texas. See also Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120. As to the burden of complaint to show probable prejudice, see Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646. See also Rules 434 and 503 Texas Rules of Civil Procedure.

We have considered each of the other errors assigned, but we are of the view that none of the rest of them present reversible error, and each is overruled.

Owing to the fact that the other errors not discussed may not arise on another trial we see no necessity of discussing them.

For the errors pointed out and discussed, the cause is reversed and remanded. The costs of this appeal are taxed against appellees.

### On Motion for Rehearing

In our original opinion we did not intend to cite the Smerke case on the question of presumed error, but cited it only on the cumulative effect of the evidence relating to the sale of the $75,000 concrete mix as detailed in the opinion and the argument of counsel made in connection therewith. We have given much consideration to the appellees' motions for re-hearing and have reviewed the decisions written by our Courts of Civil Appeals, and our Supreme Court relating to Rules 327, 434 and 503 Texas Rules of Civil Procedure, with the view and hope of making a correct application of the Harmless Error Rule to the question here before us. In Cloud v. Zellers, Tex., 309 S.W.2d 806, 808, we find this statement:

"* * * the reversal of the trial court's judgment was not justified unless an examination of the record as a whole leads to the conviction that the error was calculated to cause and probably did cause the jury to give the an-

swers it did give to all issues which will support the judgment. \* \* \*

"The question of the prejudicial character of the testimony as it bears on the issues of contributory negligence is much the same as the question with which we were concerned in Mrs. Baird's Bread Co. v. Hearn, 157 Tex. 159, 300 S.W.2d 646. That case reached us on a question of jury misconduct, but the legal problem was the same as the problem in this case. \* \* \* In refusing to hold that the improper testimony of the juror probably caused the jury to make the finding it did make on the contributory negligence issue, we emphasized that the impact of the statement of the juror on that issue 'was rather remote and inferential'. \* \* \* We also emphasized the fact that the jury had returned a verdict evidencing a discriminating effort to answer the issues intelligently and conscientiously from the evidence properly before them."

In Texas Employers' Insurance Association v. McCaslin, Tex., 317 S.W.2d 916, 918, the Court, in discussing the Harmless Error Rule said:

"There is no requirement that the party asserting error must show injury beyond a reasonable probability in order to secure a reversal of a judgment. And in estimating the probability of injury, the act of overt misconduct in itself may be the most compelling factor in establishing prejudice. \* \* \*"

Again in this opinion we find:

"Rule 327 does not preclude the drawing of logical inferences of prejudice and unfairness from the overt act itself for an action or occurrence may be so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of harm is met, prima facie at least, by simply

showing the improper act and nothing more."

In Condra Funeral Home v. Rollin, Tex., 314 S.W.2d 277, 280, we find this statement:

"Under Rules 434 and 503, Texas Rules of Civil Procedure, appellate courts are directed not to reverse a trial court judgment for errors of law committed during the course of the trial of a case unless the error complained of 'amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.' In enforcing those Rules we have held with respect to many and various types of errors that a reversal may be ordered only when a review of 'the whole record' convinces the reviewing court that but for the error a different verdict or judgment would probably have been rendered."

■ It is obvious from the pronouncements of our Supreme Court that the task of correctly applying the Harmless Error Rule is not one of easy solution here. It becomes more difficult in the case at bar because although there was a wide divergence in the testimony as to value, yet the jury's answers to the value of the land taken and for the damages sustained to the remaining tract is substantial in each instance; however, when we consider the testimony complained of, its direct and heavy impact upon the issue of damages, and having in mind the record as a whole, we think appellants have carried their burden by showing the improper testimony and the harmful argument thereon. It seems to us that the proof of harm is met prima facie, at least by simply showing the improper and the highly prejudicial testimony and the argument of appellees' counsel thereon. Since appellants' land is being taken from them without their consent they should have a trial as near as possible free from prejudicial error.

Accordingly it is our view that the testimony complained of and the argument of counsel thereon requires in all fairness that this cause be reversed and remanded and appellees' motions for re-hearing are overruled.