Roy STRANGE, Petitioner,

v.

TREASURE CITY, Respondent.

No. B–9133.

Supreme Court of Texas.

Sept. 12, 1980.

On Rehearing Oct. 29, 1980.

court overruled the defendant's motion for new trial based on several acts of jury misconduct. The court of civil appeals reversed the judgment of the trial court and remanded the cause for a new trial; holding that the alleged acts of misconduct did occur, and that the misconduct had denied the defendant a fair trial. 590 S.W.2d 816. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Roy Strange sued Treasure City for damages due to false imprisonment. The incident alleged to have been false imprisonment occurred while Mr. Strange was shopping in the Treasure City store. The jury found that: (1) Treasure City did not have reasonable cause to detain Mr. Strange; (2) Mr. Strange suffered mental anguish, humiliation and damage to his reputation in the amount of $1,500.00; (3) Treasure City's employees acted with malice; (4) Treasure City should pay $7,000.00 exemplary damages.[1]

The trial court rendered judgment on the jury verdict. Treasure City filed a motion for new trial alleging jury misconduct. There was a hearing on the motion at which four jurors testified concerning the deliberations. After the hearing, the trial court overruled Treasure City's motion for new trial.

On appeal, the court of civil appeals found that the jurors' testimony established the following acts of misconduct: (1) a discussion of whether an insurance company would pay any judgment; (2) a discussion of whether the plaintiff's attorney would receive one-third of any money awarded as a contingent fee; (3) a discussion of whether the plaintiff would be required to pay taxes on a judgment; (4) a discussion of whether Treasure City's employees were racially biased; (5) a discussion of whether reimbursement for lost wages and deposition costs was a better way to assess damages than to follow the court's charge; (6) a statement by a juror that she "had personal

John H. Cochran, Dallas, for petitioner.

Oster & Kaufman, Stanley M. Kaufman and Herbert Garon, Jr., Dallas, for respondent.

DENTON, Justice.

This appeal presents questions concerning jury misconduct. After a hearing, the trial

1. Although the court of civil appeals opinion states that the jury found Treasure City should pay $8,000.00 exemplary damages, the record reveals that the correct figure for exemplary damages was $7,000.00.

reasons to give as much money as possible" to the plaintiff.

In reviewing the record to determine jury misconduct, certain legal rules must be applied. Rule 327 Tex.R.Civ.P. provides:

> Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

 Under this rule the party seeking a new trial on the basis of jury misconduct must establish not only that the alleged misconduct occurred, but also that it was material misconduct, and that based on the record as a whole, the misconduct probably resulted in harm to the complaining party. *Fountain v. Ferguson*, 441 S.W.2d 506, 507 (Tex.1969), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969); *Crawford v. Detering Co.*, 150 Tex. 140, 237 S.W.2d 615 (1951); *Baucum v. Statewide Hot Shot*, 550 S.W.2d 156, 159 (Tex.Civ.App.–Corpus Christi 1977, writ ref'd n. r. e.). In determining whether the complaining party has met this burden, only the overt acts of the jury may be considered, and any testimony concerning the mental processes of the jurors must be disregarded. *Trousdale v. Texas & New Orleans Railroad Co.*, 154 Tex. 231, 276 S.W.2d 242 (1955). Whether the alleged misconduct has occurred is a question of fact, and if there is conflicting evidence on this issue, the finding of the trial

court is binding on appellate review. If, however, the evidence of misconduct is not conflicting, a reviewing court is not bound by a finding of the trial court which is contrary to conclusive evidence. *Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965); *State v. Wair*, 163 Tex. 69, 351 S.W.2d 878 (1961); *Roming v. McDonald*, 514 S.W.2d 129 (Tex. Civ.App.–El Paso 1974, writ ref'd n. r. e.). Here the trial court was not requested to and did not make findings of fact and conclusions of law. Since there are no specific findings of fact as to whether the alleged misconduct occurred, it is presumed that the trial court found that such misconduct did not occur, provided there is evidence to support such a finding. *Fountain v. Ferguson, supra; Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462, 465 (1943); *Monkey Grip Rubber Co. v. Walton*, 122 Tex. 185, 53 S.W.2d 770 (1932).

The evidence of jury misconduct is found in the testimony of four jurors at the hearing on the motion for new trial. The jury affirmatively answered special issue No. 1, which inquired whether Treasure City had unreasonably detained the plaintiff. All of the alleged jury misconduct occurred during the deliberations on the remaining issues of actual damages, malice, and exemplary damages. Of the four jurors who testified, two of the jurors, Mr. Braun and Mrs. Richards, refused to sign the verdict. It is significant to point out that Treasure City relies solely on the affidavits and testimony of Mr. Braun and Mrs. Richards to prove the alleged acts of misconduct. Neither of them agreed with the entire verdict.[2] Mr. Braun testified that during the jury's deliberations, he was "the devil's advocate on the whole thing." The following is a summary of the jurors' testimony concerning the specific acts of misconduct alleged.

### Lost Wages

Mr. George Braun, the foreman, testified that during the deliberations on the special issue concerning actual damages that he

---

2. At least one court of civil appeals opinion has considered it significant that a juror voted against the verdict, when the juror's affidavit is offered as proof of jury misconduct. *Texa*

*Employers Insurance Assoc. v. Thomas*, 517 S.W.2d 832, 837 (Tex.Civ.App.–San Antonio 1974, no writ).

suggested that they award a figure based on the plaintiff's lost wages and deposition costs. However, on cross–examination, he testified that he had fulfilled his obligation under the court's charge, and had immediately reprimanded any violations of the court's instructions by the jurors. The court's charge required the jury to consider *only* the elements of mental anguish, humiliation, and damage to reputation. Therefore, Mr. Braun's testimony that he followed the court's charge conflicts with the testimony that at his suggestion the jury utilized a means of determining actual damages that violated the court's instructions. In *Maryland Casualty Co. v. Hearks*, 144 Tex. 317, 190 S.W.2d 62 (1945), this court held that the trial court's determination that misconduct did not occur was not error in view of the inconsistency of the juror's testimony. *See also Monkey Grip Rubber Co. v. Walton*, 122 Tex. 185, 53 S.W.2d 770, 773 (1932) in which this court stated:

> A juror's testimony upon such hearing may be so contradictory and inconsistent that the trial court in exercising its privilege to pass upon the credibility of the witness may be justified in disregarding his entire testimony.

Mrs. Richards, who also disagreed with the verdict, testified that the actual damages figure was determined by "someone" calculating the amount of the plaintiff's lost wages for two days in court in addition to deposition costs, and attorney's fees. Her testimony conflicts with Braun's in that she testified that Braun told the jury they were not to consider wages.

Of the remaining two jurors, Mrs. Anderson had no recollection of the discussion of deposition costs, attorney's fees, or how the $1,500.00 actual damages award was determined. Mr. Norton, however, testified that the subject of lost wages may have come up, but that it was immediately "shut off" by the foreman, and that he could not recall anyone calculating lost wages.

█ In view of the conflicting testimony of Mr. Norton, Mrs. Richards and Mr. Braun, and the inconsistency in Mr. Braun's own testimony, we are required to follo⸱ꞁ

the trial court's implied finding that this specific act of misconduct did not occur.

### Statement of Personal Bias

Another act of misconduct found by the court of civil appeals was the statement by a juror that she "had personal reasons to give as much money as possible" to the plaintiff. The juror alleged to have made the statement was not called to testify at the hearing, so there is no evidence of the truth of such a statement, or that the juror Mrs. Sanchez was in fact biased in favor of the plaintiff. Treasure City does not allege that Mrs. Sanchez committed misconduct by incorrectly answering an inquiry on personal bias during the voir dire. *See Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963). However, such a statement of personal bias which introduces prejudicial matter into the jury's deliberations is misconduct. *See* McDonald, Texas Civil Practice, § 14.11 (1970).

Mr. Braun testified that the statement was made by Mrs. Sanchez during deliberations on the exemplary damages special issue. He stated that "Mrs. Sanchez held out for a very high amount, I think it was $14,500, and I asked her how–what–how she arrived at this figure or why or where and she said that its personal." Mrs. Richards also testified that during deliberations Mrs. Sanchez had made the statement of personal bias. Juror Norton did not recall any juror making such a statement, and Juror Anderson was not questioned on this matter. The positive testimony of Braun and Richards is not contradicted by Norton's statement that he could not recall such misconduct. *Southwestern Sheet Metal Works v. C. H. Leavell & Co.*, 414 S.W.2d 723 (Tex.Civ.App.–El Paso 1967, writ ref'd n. r. e.); *Travelers Ins. Co. v. Carter*, 298 S.W.2d 231 (Eastland 1956, writ ref'd n. r. e.).

█ Since we are unable to disregard positive, uncontradicted, and unimpeached testimony concerning misconduct, we hold that the statement of personal bias by Mrs. Sanchez was material misconduct which introduced into the jury deliberations prejudicial matter outside the record. Next, it

must be determined whether the record shows that injury probably resulted to Treasure City from this misconduct. Mrs. Sanchez' statement was not made in an attempt to persuade the jurors, but merely in reply to the foreman's question. The statement was not repeated, it was not discussed by the other jurors, and no further explanation was offered by Mrs. Sanchez. In view of this and the fact that the exemplary damages finally awarded by the jury were less than half the amount sought by Mrs. Sanchez, we conclude that the misconduct did not result in probable injury to the defendant, Treasure City. *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646, 649–50 (1957).

### Taxes

■ Mr. Braun testified that someone made a passing comment that "they wanted to make sure that whatever award [the plaintiff] got would be tax free." Mrs. Richards testified that the subject of income tax had been mentioned by someone in general conversation. Neither Mrs. Anderson nor Mr. Norton could recall any mention of income tax. Since there was only a casual comment on income tax made by an unidentified juror, rather than an extended discussion among the jurors, we hold that such misconduct was not material. This particular misconduct was not reasonably calculated to prejudice the rights of Treasure City, and it does not appear from the record that injury probably resulted. *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646, 649–50 (1957).

### Bias

Mr. Braun testified that during the jury's deliberations on special issue No. 4 on exemplary damages someone made a statement that the plaintiff "didn't get a fair shake" because he was black. Braun also testified that "there was no discussion, it was just a comment that none of us felt that was a fact." He also stated that he probably gave a reprimand after the remark.

When questioned on whether there had been any discussion concerning race, Mrs. Richards stated that some members of the jury had expressed opinions to the effect that it was more difficult for minorities to take the initiative and sue to recover damages for discrimination. The other two jurors were not questioned on this matter.

It is significant to note that special issue No. 3 inquired whether the employees of Treasure City had acted with malice. The jury was instructed as follows:

> Malice means ill will and bad or evil motive or such gross indifference to the rights of another as amounts to a willful or wanton act done intentionally and without just cause or excuse.

■ A discussion of whether the plaintiff had "gotten a fair shake" would be consistent with the inquiry contained in special issue No. 3, and relevant to the award of exemplary damages. Therefore, a juror's expression of an opinion on the issue of whether the plaintiff had "gotten a fair shake" was not misconduct in this context.

### Attorney's Fees

■ Mr. Braun testified that it was "tossed around" and an opinion given that under a contingency fee arrangement, the plaintiff would receive two–thirds and their attorney one–third of the judgment. This was described as occurring during a "rambling discussion" among several jurors. Braun stated that after he reprimanded the jurors, no further discussion was had. Mrs. Richards testified that she also rebuked the discussion of attorney's fees. Mr. Norton recalled that the subject of attorney's fees arose, but was "shut off" by the foreman. Mrs. Anderson could not recall a discussion of attorney's fees. The mere mention of attorney's fees during jury deliberations has been held insufficient to require a new trial. *Walker v. Thompson*, 287 S.W.2d 556 (Tex.Civ.App.–San Antonio 1956, writ ref'd n. r. e.); *City of Fort Worth v. Estes*, 279 S.W.2d 687, 689 (Tex.Civ.App.–Fort Worth 1955, writ ref'd n. r. e.); *McCarthy Oil & Gas Corp. v. Cunningham*, 255 S.W.2d 368, 371–72 (Tex.Civ.App.–Galveston 1953, writ

ref'd n. r. e.); *see also, General Motors Corp. v. Hopkins*, 535 S.W.2d 880, 891 (Tex. Civ.App.–Houston [1st Dist.] 1976), aff'd 548 S.W.2d 344 (Tex.1977); *Missouri Pacific Railroad Co. v. Vann*, 384 S.W.2d 385, 389 (Tex.Civ.App.–Beaumont 1964, writ ref'd n. r. e.). A casual mention of attorney's fees which is promptly rebuked is not material misconduct which would unreasonably prejudice a defendant. We conclude that Treasure City was not unreasonably prejudiced by the mention of attorney's fees as shown by this record.

### Insurance

Finally, we must determine whether there was jury misconduct due to a discussion of insurance. Mr. Braun testified that one juror wondered aloud whether the defendant or an insurance company would pay the judgment. Braun then advised the jurors that they were not to discuss such matters. He stated that the subject of insurance again came up during the deliberations on exemplary damages, and that he again gave a reprimand. Braun testified that the involvement of insurance had been stated as *opinion rather than fact.* Mrs. Richards' testimony on the discussion of insurance was contradictory. She testified that one of the jurors stated that all big companies carry liability insurance, and someone was familiar with the type of insurance coverage involved. She testified that Braun may have reprimanded the discussion of insurance, and that she did rebuke such a discussion. Later, on cross–examination, she testified that she could not recall whether the discussion of insurance had been rebuked. Mrs. Anderson did not recall any discussion of insurance, and Mr. Norton testified that he did not remember anyone discussing whether an insurance company would pay the verdict.

■ Based on this testimony it would appear that the subject of insurance was twice mentioned, and promptly rebuked both times. The comments on insurance were stated as opinion rather than fact, the comments were brief, and no amount of insurance coverage was discussed. Als >,

there is no testimony that the amount of the verdict was increased after the mention of insurance.

In *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462, 465 (1943), this court judicially noticed "that a jury is more apt to render a judgment against a defendant, and for a larger amount if it *knows* that the defendant is protected by insurance." (Emphasis added). However, in *Putman v. Lazarus*, 156 Tex. 154, 293 S.W.2d 493, 495 (1956) this court held that, "It is our opinion that a mere casual mention of insurance, without discussion, followed by a prompt rebuke from a fellow juror, *does not constitute such misconduct as would require a reversal of the judgment based on the jury's verdict."* Since there was not an extended discussion about insurance, and each mention of it was promptly rebuked, we conclude that the misconduct was not material.

■ Next we must consider whether the cumulative effect of these acts of misconduct resulted in probable injury. *Scoggins v. Curtiss & Taylor*, 148 Tex. 15, 219 S.W.2d 451, 453 (1949). *See* J. Pope, *Jury Misconduct and Harm*, 12 Baylor L.Rev. 355, 375–77 (1960). Considering the record as a whole, we conclude that probable injury to the complaining party, Treasure City, has not been shown, and that the trial court did not err in denying Treasure City's motion for new trial. Rule 327 Tex.R.Civ.P.; *Fountain v. Ferguson*, 441 S.W.2d 506, 507 (Tex.1969), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

■ Respondent, Treasure City, has filed a motion for rehearing calling our attention to the fact that it presented three points of error in the court of civil appeals which were rendered immaterial under its holding. Some of these points challenge the sufficiency of the evidence to support the findings of the jury in answer to special

issues. Since this Court has no jurisdiction to determine these points of error, we remand the cause to the court of civil appeals. *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas, Tex.*, 491 S.W.2d 869 (1973); *Wood v. Kane Boiler Works*, 150 Tex. 191, 238 S.W.2d 172 (1951).

We adhere to our previous judgment which reverses the judgment of the court of civil appeals. We withdraw that portion of our judgment which affirms the judgment of the trial court. In all other respects, the motion for rehearing is overruled.

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for determination of the points of error not heretofore considered.