**William MATTHEWS, Appellant,**

v.

**LOYD ELECTRIC COMPANY, INC., Appellee.**

No. 04–83–00511–CV.

Court of Appeals of Texas, San Antonio.

June 26, 1985.

Rehearing Denied July 16, 1985.

Pat Maloney, Jr., Law Offices of Pat Maloney, San Antonio, for appellant.

James E. Ingram, McCamish, Ingram, Martin & Brown, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and BUTTS, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a take nothing judgment in a product liability and personal injury action.

Appellant William "Marty" Matthews brought this suit against appellee Loyd Electric Company, Inc., to recover damages for injuries received when he was sucked into a conveying machine while lubricating the conveying machine at his place of employment, K.O. Steel Casting Company, Inc. Appellant's action was based on product liability and negligence. In response to appellant's petition, appellee Loyd Electric Company, Inc., pled, among other things, that appellant's negligence was the proximate cause of the accident and a cross-claim against the The Rapids-Standard Company, Inc. (Rapistan). The case was tried to a jury on the basis of negligence. It was submitted to the jury on the following special issues which were answered as follows:

### SPECIAL ISSUE NO. 1

On the occasion in question was LOYD ELECTRIC COMPANY negligent with respect to any of the following?

Answer 'yes' or 'no' on each line in Column 1. If any of your answers in Column 1 are 'yes', was any such negligence a proximate cause of the occurrence in question?

Answer 'yes' or 'no' on the corresponding line of Column 2.

|  | COLUMN 1 NEGLIGENCE | COLUMN 2 PROXIMATE CAUSE |
|---|---|---|
| A) Failure to provide a lockable cutoff switch outside the locked cinderblock building: | Yes | Yes (10.2) |
| B) Placing a disconnect in a building capable of being locked: | No | — |
| C) Failure to provide individually lockable disconnect: | Yes | No |
| D) Providing adequate warnings to K.O. Steel not to lock the cinderblock building: | Yes | No |
| E) Replacing a disconnect switch for the conveyor with a circuit breaker in a panel |  |  |

with other switches in the cinderblock building:

No        —

F) Failure to label the disconnect to the sand conveyor:

Yes        No

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the Plaintiff, William (Marty) Matthews, was negligent with respect to any of the following?  Answer 'yes' or 'no' to each line in column 1.  If any of your answers in column 1 are 'yes', was any such negligence a proximate cause of the occurrence in question answer 'yes' or 'no' in column 2 of the corresponding line.

|  | COLUMN 1<br>NEGLIGENCE | COLUMN 2<br>PROXIMATE CAUSE |
|---|---|---|
| A. In placing himself in a position on the conveyor while capable of being turned on? | Yes | Yes |
| B. In lubricating the conveyor without turning off the power? | Yes (11.1) | Yes (11.1) |
| C. In his observation of safety procedures for maintenance? | Yes | Yes |
| D. In failing to get off the conveyor belt onto the catwalk before leaving the conveyor? | Yes | Yes |

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Rapids-Standard Company, Inc. (Rapistan), was negligent with respect to any of the following?  Answer 'yes' or 'no' to each line in column 1.  If any of your answers in Column 1 are 'yes', was any such negligence a proximate cause of the occurrence in question answer 'yes' or 'no' in column 2 of the corresponding line.

|  | COLUMN 1<br>NEGLIGENCE | COLUMN 2<br>PROXIMATE CAUSE |
|---|---|---|
| A. In failing to provide access to the lubrication points? | Yes | Yes |
| B. In failing to provide 'piping' for lubrication of the conveyor? | Yes | Yes (10.2) |
| C. In failing to warn of the dangers in lubricating the conveyor system? | Yes | Yes |
| D. In failing to warn of the need for additional safety equip- | | |

ment needed to lubricate the conveyor system?     Yes       Yes

E. In failing to provide a method of checking the oil in the transmission of the conveyor motor?     Yes       No

If in answer to Special Issues Nos. 1 and 2; or 1 and 3; or 2 and 3; or 1, 2 and 3 you have found that the acts or omissions of more than one person proximately caused the occurrence in question, then answer the following issue; otherwise, do not answer the following issue. For the purpose of your answer to the following issue, negligence includes any act or omission found by you in answers to such issues to have been a proximate cause of the occurrence in question.

     RAPISTAN

     MARTY MATTHEWS

     LOYD ELECTRIC COMPANY

In answering this question, you should consider only the negligence of Marty Matthews, Rapistan, and Loyd Electric Company which you have found to be a proximate cause of the occurrence; therefore, the percentage should add up to 100%.

In answering the following issue, do not reduce the amount in your answer because of MARTY MATTHEWS' negligence, if any.

SPECIAL ISSUE NO. 5

What sum of money, if paid now in cash, do you find from a preponderance of the evidence would be compensation for the reasonable expenses for necessary medical, hospital, or psychiatric care which William 'Marty' Matthews will in reasonable probability, require in the future from the occurrence in question?

Answer in dollars and cents, if any.

We, the Jury, answer: $1,500,000 (11–1)

SPECIAL ISSUE NO. 4

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

Answer by stating the percentage, if any, opposite each name.

                  29

(12–0)    53

                  18

In answering the following issue do not reduce the amount in your answer because of Marty Matthews' negligence, if any.

SPECIAL ISSUE NO. 5A

Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical, hospital, or psychiatric care received by Marty Matthews in the past for treatment of his injuries resulting from the occurrence in question.

Answer in dollars and cents, if any.

We, the Jury, answer: $104,000

In answering the following issue, do not reduce the amounts in your answers because of MARTY MATTHEWS' negligence, if any.

SPECIAL ISSUE NO. 6

What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reason-

ably compensate WILLIAM MATTHEWS for his injuries, which you find from a preponderance of the evidence resulted from the occurrence in question?

You are to consider such elements of damage separately so as not to include damages for one element in any other element.

Answer separately in dollars and cents, with respect to each of the following elements and none other.

A. Physical pain and mental anguish in the past;

   We, the jury, answer:       $ 100,000

B. Physical pain and mental anguish which, in reasonable probability, he will suffer in the future;

   We, the jury, answer:       $ 250,000

C. Physical impairment in the past;

   We, the jury, answer:       $ 100,000

D. Physical impairment which, in reasonable probability he will suffer in the future;

   We, the jury, answer:       $ 100,000

E. Loss of earnings in the past;

   We, the jury, answer:       $  42,000

F. Loss of earning capacity which, in reasonable probability, he will sustain in the future;

   We, the jury, answer:       $ 444,000   (10.2)

G. Disfigurement;

   We, the jury, answer:       $1,000,000   (10.2)

In paragraph six of its instructions the court instructed the jury as set out in the pertinent portions of TEX.R.CIV.P. 292, concerning a verdict by portion of a jury. The jury returned to the courtroom and announced they had reached a verdict. Before receiving their verdict the court read the issues and the answers of the jury to the attorneys in open court; the statement of facts before us reflects the following:

THE COURT: Now, I should go back. There are some notations next to various ones that show 10.2, and I am sure that means 10–2 verdict. If you would like to go back to issue no. 1, I will tell you what those notations are for your information. On Special Issue No. 1, A on the second column, is [sic] has a 10.2. On Special Issue No. 2, on the B part, on lubricating the conveyor without turning off the power is 11.1 in column A, and 11 to 1 in column B. Then Special Issue 3; B, column 2, indicates 10 and 2.

MR. INGRAM [Attorney for Appellee]: What was that, Judge?

THE COURT: Special Issue 3B, and in the second column, 10.2.

Special Issue 5 where the 1.5 million is given is 11–1.

And in 6 under 6F and G it has 10.2 for the $444,000 and 1,000,000, 10.2.

Now this verdict is signed by—eleven people signed, and the foreman in his place. Is that a unanimous verdict?

MR. SWARTZ [Foreman]: We were a bit confused there, since they were not all unanimous there were different people that did not agree on certain points.

THE COURT: Okay. So you all—

MR. SWARTZ: Not the same people.

THE COURT: Okay. Now then let me talk to the attorneys a minute.

(Thereupon, there was an off-the-record discussion at the Bench).

THE COURT: The ones that you say would be 10.2 are those that I read out?

MR. SWARTZ: Yes.

THE COURT: Or 11.1?

MR. SWARTZ: Yes. But they are not necessarily the same two that would disagree; two that would disagree on one point would not necessarily be the same two on another point.

THE COURT: But, for instance, on the percentage issue, on the comparative issue one, did you all agree on that one?

MR. SWARTZ: Unanimous, yes.

THE COURT: Then at this time the Court will receive the verdict. . . .

\*    \*    \*    \*    \*    \*

Is there any other items that the attorneys would like at this time?

\*    \*    \*    \*    \*    \*

MR. MALONEY [Attorney for Appellant]: For the record I am going to let this jury live with that verdict. I don't want them polled.

THE COURT: Do you wish to have them polled?

MR. INGRAM: No, ma'am, we do not. (Jury Dismissed)

\*    \*    \*    \*    \*    \*

MR. MALONEY: Just before we recess, for the record, the form of the answers for later post-trial motions we are objecting to the numbers as they relate, but we are not asking for a poll at this time.

The court entered a take nothing judgment against appellant. Appellant timely filed his motion for new trial and the record before us reflects that it was overruled. The statement of facts of the hearing on appellant's motion for new trial, however, is not included in the record before us.

In his first and fourth points of error appellant contends that the court erred in overruling his motion for a new trial because (1) "an insufficient number of special issues was answered by the jury" and (2) "because the jury committed misconduct in agreeing in advance to let any ten votes determine answers to the special issues"; that in each instance the "error was reasonably calculated to cause and probably did cause the rendition of an improper verdict."

To obtain a new trial on the basis of misconduct, our Supreme Court has set out the following guidelines in *Louis Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985):

[T]he complaining party must show: (1) that the misconduct occurred, (2) that it was material, and (3) that, based on the record as a whole, the misconduct probably resulted in harm to them. *Flores v. Dosher*, 622 S.W.2d 573 (Tex.1980); TEX. R.CIV.P. 327. The complaining party has the burden to prove all three elements before a new trial can be granted. *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969).

\*    \*    \*    \*    \*    \*

To show probably injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he 'would otherwise have done on one or more issues vital to the judgment.' *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646, 649 (1957).

In the case before us, as we have noted before, there is no record of the new trial hearing and only a partial record which we have heretofore quoted almost in its entire-

ty. From the state of the record before us it is impossible for us to determine "probable injury." We are unwilling to engage in unguided speculation into the degree of harm to the appellant in this case. We conclude that appellant has failed to discharge his burden of showing probable harm. His points of error numbers one and four are overruled.

■ In his points of error numbers two and three appellant contends that the trial court erred (1) "in failing to return the jury for further deliberations upon showing of jurors confusion as to how to arrive at a verdict" and (2) "in receiving the verdict and failing to return the jury for further deliberations because the issues of negligence had not been answered"; that in each instance the "error was reasonably calculated to cause and probably did cause the rendition of an improper verdict." In support of his contention, appellant points out that the same ten jurors did not argue to all issues submitted and answered as required by TEX.R.CIV.P. 292. He asserts that special issue numbers one, two and three, the negligence issues, were not answered as required by law and that the court supplied the answers to said issues by accepting the percentage issue as the controlling issue; that the unanswered negligence issues were material to the case and would change the outcome if answered in their entirety; and, that the court should have declined to accept the verdict and retire the jury for further deliberation. Appellant further argues that Rule 292's requirement that all of the issues be answered by the same ten jurors is mandatory rather than directory and refers us to *McCauley v. Charter Oak Fire Insurance Co.*, 660 S.W.2d 863 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). In our view *McCauley* is not applicable to the situation before us.

Appellee replies that the material issues necessary to support the judgment were in fact answered unanimously by the jury. In this regard appellee points out that the jury verdict contained a unanimous finding that appellant was negligent on three grounds, that his negligence was a proximate cause of the accident in question, and that this negligence constituted fifty-three percent (53%) of the total negligence which caused the accident. We agree with appellee.

■ The same ten jurors voted on issues in the charge from which a judgment could be written for appellee. The issues on which the same ten jurors did not agree were not crucial. We conclude therefore that as long as the same ten jurors voted for enough issues in the charge from which a judgment can be written, no reversible error is presented. *See State Highway Department v. Pinner*, 531 S.W.2d 851, 857 (Tex.Civ.App.—Beaumont 1975, no writ). Appellee was entitled to judgment no matter what the jury may have said in response to the issues that were not answered by the same ten jurors. *Stalder v. Bowen*, 373 S.W.2d 824 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.); TEX.R.CIV.P. 290.

Accordingly, the judgment of the trial court is affirmed.