Trinity Gonzalez v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-049-CR 
& 
No. 10-97-081-CR
&
No. 10-97-082-CR

Â Â Â Â Â TRINITY GONZALEZ,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the Criminal District Court No. 2
Dallas County, Texas
Trial Court # F96-00264-JI , F95-75475-TI & F96-00263-JI
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Trinity Gonzalez was convicted of two counts of aggravated assault with a deadly weapon and
one count of murder. He was sentenced to twenty yearsâ imprisonment for the assaults, and life
imprisonment for the murder. Counsel filed an Anders brief and a motion to withdraw. Anders
v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L. Ed. 2d 493 (1967).
Â Â Â Â Â Â Gonzalez filed a pro se response to the Anders brief. See Wilson v. State, 955 S.W.2d 693,
696-97 (Tex. App.âWaco 1997, order). Although the State asked for an extension of time in
which to file a reply brief, one has not been filed. We now address the potential issues identified
by counsel and Gonzalez and conduct an independent review of the record âto decide whether the
case is wholly frivolous.â Anders, 386 U.S. at 744, 87 S.Ct. at 1400.
POTENTIAL ISSUES
Â Â Â Â Â Â Counsel identified the sufficiency of the evidence and the voluntariness of Gonzalezâs
confession as potential issues for appeal. Gonzalez likewise challenges the voluntariness of his
confession and additionally asserts error where the State solicited evidence from him regarding
a prior conviction and extraneous offenses. Gonzalez further urges that counsel rendered
ineffective assistance in both phases of trial.



Confession
Â Â Â Â Â Â Detective Linda Erwin testified that Gonzalez gave a statement voluntarily. That statement
was offered into evidence without objection. Gonzalez asserts that the court should have made
findings regarding the voluntariness of his confession pursuant to article 38.22, section 6 of the
Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.22, Â§ 6 (Vernon 1979). 
However, article 38.22, section 6 requires such findings only after a question is raised as to the
voluntariness of the confession. No such question was raised in this case.
Sufficiency
Â Â Â Â Â Â We have noted before that sufficiency of the evidence does not seem to fit within the category
of âarguments that cannot conceivably persuade the court,â theorizing that an advocate can always
present an argument, regardless of how convincing it may be, that the evidence is lacking. 
Taulung v. State, 979 S.W.2d 854, 857 (Tex. App.âWaco 1998, no pet.) We have nevertheless
followed the guide of other courts and addressed a sufficiency challenge in the Anders context. 
Id. (citing Spencer v. State, 465 S.W.2d 370, 370-71 (Tex. Crim. App. 1971); Bruns v. State, 924
S.W.2d 176, 178-79 (Tex. App.âSan Antonio 1996, no pet.); Crittendon v. State, 923 S.W.2d
632, 635 (Tex. App.âHouston [1st Dist.] 1995, no pet.); Mays v. State, 904 S.W.2d 920, 925
(Tex. App.âFort Worth 1995, no pet.)). We will do so again.
Â Â Â Â Â Â Gonzalez testified on his own behalf during the guilt-innocence phase of trial, stating that on
the day in question he and his nephew decided to drive by Skyline High School. Gonzalez testified
that a group of guys âstarted saying some verbal thingsâ and âthrowing gang-related signsâ in his
direction. He said that this scared him, but that he did not want to leave because he did not want
them to follow him. Gonzalez testified that he thought the guys were going to pull a gun, so he
pulled his gun out and started shooting. He said that, although he was not shooting at anyone in
particular, he did shoot three people that day, killing one. In light of this testimony, the only
element on which a question of evidentiary sufficiency exists is whether Gonzalezâs claim that he
was scared and thought they had a gun negated the culpable mental state of âknowingly and
intentionally.â
Â Â Â Â Â Â In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found the essential elements
beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (citing
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)). 
We resolve any inconsistencies in the evidence in favor of the verdict. Matson v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991). Applying this standard in Gonzalezâs case, we
conclude the evidence is legally sufficient to support the conviction. 
Â Â Â Â Â Â In conducting a factual-sufficiency review, we examine all of the evidence impartially, and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We give due deference to the factfinderâs
assessment of the weight and credibility of the evidence and will find it insufficient only where
necessary to prevent manifest injustice. Cain, 958 S.W.2d at 407; Calhoun v. State, 951 S.W.2d
803, 810 (Tex. App.âWaco 1997, pet. refâd). Giving appropriate deference to the verdict, we
cannot say from the record that the verdict is âso contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust." Cain, 958 S.W.2d at 410. Accordingly, the
evidence is factually sufficient to support Gonzalezâs conviction.
extraneous offense evidence
Â Â Â Â Â Â On cross-examination, the State asked Gonzalez if he had ever been convicted of a felony and
he answered, without objection, that he had been convicted of unauthorized use of a motor vehicle. 
This evidence was properly solicited under Rule of Evidence 609. Tex. R. Evid. 609 (âevidence
that the witness has been convicted of a crime shall be admitted . . .â). Thus, this is not a viable
issue for review.
CONCLUSION
Â Â Â Â Â Â We have reviewed the record and have found no errors of arguable merit. See Wilson, 955
S.W.2d at 698. Accordingly, we grant counselâs motion to withdraw and affirm the judgment. 
Id.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed August 18, 1999 
Do not publish



estimony in this case on its theory of the fires causation
is unreliable and thus incompetent evidence that cannot support the juryÂs
no-defect finding and the judgment.Â  See General Motors Corp. v. Iracheta,
161 S.W.3d 462, 470-71 (Tex. 2005) (stating that conclusory, speculative, or
incompetent evidence cannot support a judgment).Â  This contention is misplaced
because that rule of law necessarily applies only to a jury finding and
judgment in favor of the party who had the burden of proof.Â  See id.; Liberty Mut. Ins. Co. v. Burk, --- S.W.3d ---, ---, 2009 WL 2751039, at *4 (Tex. App.ÂFort Worth Aug. 31, 2009, no pet. h.). Â In this case, Ford did not have the burden
of proof; it was not required to prove there was no defect.Â  See Burk,
--- S.W.3d at ---, 2009 WL 2751039, at *4.Â  Ford also was not required to prove
an alternate theory for the fire, and, not having the burden of proof, it need
not have presented any expert testimony at all.Â  See id.Â  Accordingly,
the alleged unreliability of FordÂs expert testimony, which we note the Hunters
did not move to exclude or object to at trial, is immaterial, for holding
otherwise would improperly shift the burden of proof to Ford.Â  See id.

Having argued that FordÂs expert testimony was unreliable and
should be disregarded on appeal, the Hunters next contend that they established
their design-defect claim as a matter of law through their own now-uncontroverted
expert testimony, which they assert was binding on the jury.Â  Even if we were
to disregard FordÂs expert testimony and to review only the HuntersÂ expert
testimony, in this case the jury could still properly determine that the Hunters
had not proved a defective design that was unreasonably dangerous.Â  See Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 338-39 (Tex. 1998); Rentech
Steel, L.L.C. v. Teel, --- S.W.3d ---, ---, 2009 WL 2466890, at *2-3 (Tex. App.ÂEastland Aug. 13, 2009, no pet. h.); American Interstate Ins. Co. v. Hinson,
172 S.W.3d 108, 118 & n.3 (Tex. App.ÂBeaumont 2005, pet. denied).

Uncontroverted expert testimony may be regarded as conclusive if
the nature of the subject matter requires the factfinder to be guided solely
by the opinion of experts and the evidence is otherwise credible and free from
contradictions and inconsistency.Â  Uniroyal, 977 S.W.2d at 338.Â  An
expertÂs testimony may be contradicted by the testimony of other witnesses or
by cross-examination of the expert witness.Â  Gober v. Wright, 838 S.W.2d
794, 797 (Tex. App.ÂHouston [1st Dist.] 1992, writ denied), abrogated on
other grounds, State Farm Fire & Cas. Co. v. Morua, 979 S.W.2d
616 (Tex. 1998).

There
are several types of conclusive evidence.Â  First, an appellate court conducting
a legal sufficiency review cannot Âdisregard undisputed evidence that allows of
only one logical inference.ÂÂ  By definition, such evidence can be viewed in
only one light, and reasonable jurors can reach only one conclusion from it.Â 
Jurors are not free to reach a verdict contrary to such evidence; indeed,
uncontroverted issues need not be submitted to a jury at all.

Â

Most
often, undisputed contrary evidence becomes conclusive (and thus cannot be
disregarded) when it concerns physical facts that cannot be denied.

Â

It
is impossible to define precisely when undisputed evidence becomes conclusive. Â
Â Evidence is conclusive only if reasonable people could not differ in their
conclusions, a matter that depends on the facts of each case.

Â 

There
is another category of conclusive evidence, in which the evidence is disputed.Â 
Undisputed evidence and conclusive evidence are not the sameÂundisputed
evidence may or may not be conclusive, and conclusive evidence may or may not
be undisputed.

Â

Proper
legal-sufficiency review prevents reviewing courts from substituting their
opinions on credibility for those of the jurors, but proper review also
prevents jurors from substituting their opinions for undisputed truth.

Â 

City
of Keller, 168 S.W.3d at
802 (footnotes and citations omitted).

Â 

In Uniroyal, the supreme court held that the jury was not
bound by expert testimony that a tire rim design was unreasonably dangerous.Â  See
Uniroyal, 977 S.W.2d at 339 (ÂWe conclude that the jury could properly
determine whether the rim as designed was unreasonably dangerous, and that it
was not required to follow expert testimony on this issue.Â); see also Hinson,
172 S.W.3d at 118 & n.3 (discussing Uniroyal and case law preceding and
succeeding it, and noting that ÂUniroyal is one of a multitude of cases
under Texas law in which expert testimony regarding a subject was not binding
on the juryÂ).Â  Thus, while the Hunters were required to present expert
testimony on design defect, including safer alternative design and producing cause, that
requirement does not translate into such expert testimony, even if
uncontroverted, being conclusive and binding on the jury, which alone
determines if the product is unreasonably dangerous and a producing cause.Â  See
Uniroyal, 977 S.W.2d
at 339; Rentech Steel, --- S.W.3d at ---, 2009 WL 2466890, at *2-3; see
also City of Keller, 168 S.W.3d at 820 (ÂEven uncontroverted expert testimony does not bind jurors unless
the subject matter is one for experts alone.Â) (citing Uniroyal).

The Evidence

Â Â Â Â Â Â Â Â Â Â Â  We next detail the critical
evidence under review.Â  The alleged design defect in the truck and the HuntersÂ
theory of the fire that killed Bob Hunter are as follows: 


 The
 1999 Ford F-350 diesel truck uses a two-battery, 12-volt electrical
 system.Â  One battery is located toward the front of the engine compartment
 on the driverÂs side, and the other is located toward the front of the
 engine compartment on the passenger side.Â  The two batteries are connected
 in parallel by a single cable that does not contain fuses.Â  The actual
 copper wiring of the cable is inside a corrugated plastic sheath and is
 also insulated.


Â 


 The
 battery cable connecting the two batteries is routed behind and near the
 top of the radiator in the front of the engine compartment and goes under
 the metal radiator mounting brackets.Â  In the previous model year, the
 cable was routed above the radiator framing member.


Â 


 This
 area in the front of the engine compartment is specifically designed as a
 crush zone to absorb energy in frontal collisions, which are foreseeable
 events at highway speeds.


Â 


 In
 Bob HunterÂs collision with the Toyota truck, the impact crushed the front
 of HunterÂs truck and the electrical current in the battery cable started
 the post-collision fire in the engine compartment when the cableÂs exposed
 copper wiring core touched a steel lug wrench stored in the engine
 compartment and arced, melting or welding the copper wire to the lug
 wrench.Â  


Â 


 Specifically,
 from the violent impact, the metal radiator bracket cut into and scraped
 the battery cable.Â  The bracket cut through the cableÂs plastic sheath and
 stripped away the insulation, thus exposing the copper wiring core of the
 cable.


Â 


 As
 HunterÂs truck turned onto the driverÂs side, the passenger-side battery
 came out of its tray and swung the cable in a way that draped the exposed
 copper wiring core over the lug wrench.


Â 


 The
 contact between the exposed copper wiring core of the cable and the lug
 wrench caused an electrical short and arcing that ignited the cableÂs
 plastic sheath, which started the fire in the engine compartment and
 spread to the passenger compartment, where Hunter was trapped.


Â 

The HuntersÂ experts whose testimony supported
the above synopsis were:

Â 


 James
 Mundo, an automotive design engineer and crashworthiness expert, who testified
 that routing the battery cable in the crush zone and next to the radiator
 bracket was a design defect that was unreasonably dangerous.


Â 


 Lewis
 Fitch, an electrical engineer, who testified that the battery cable at
 issue could start a fire by arcing.Â  Fitch performed an experiment with an
 exemplar battery cable, charged it with new automobile batteries, and
 applied the cableÂs exposed copper core to a grounded metal plate in an
 effort to start a fire.Â  Despite placing Âsparking lubricantÂ on the metal
 plate, in four tests Fitch obtained a small flame on the insulation only
 once and for just a few seconds.


Â 


 Cam
 Cope, an accident reconstruction expert, who testified about the cause and
 origin of the fire, opining that it started when the stripped cable draped
 over the lug wrench.Â  


Â 


 Gene
 Haynes, an electrical engineer, who testified that the fire started when
 the battery cable arced against the lug wrench.Â  He also testified about two
 safer alternative designs: Â an inertia cut-off switch to disconnect the power
 to the battery cable in the event of a collision, or re-routing the
 battery cable or providing more protective shielding to it.Â  Haynes
 conceded that no other American vehicle manufacturer uses a cut-off switch
 for the battery power.


Â 

None of the HuntersÂ experts were aware
of a similar incident involving a battery cable starting such a vehicle fire.

The HuntersÂ theory was based on the
fire starting on the battery cable in the front of the engine compartment.Â 
Volunteer fireman David Williams testified that when he arrived at the scene of
the collision, he observed fire coming out from under the right front of the truckÂs
hood, which was the highest point of the front of the truck because it was
turned over onto the driverÂs side.Â  The flame that he first saw was a one-foot
to eighteen-inch flame, and he opined that the fire started from the front of
the truck and moved toward the cab.

Pam and Larry Shields, the couple who
stopped at the scene, testified differently Â than Williams about where they saw
the fire originating.Â  Pam saw smoke coming from under the hood, but the first
flames she saw were coming up from behind and below the truckÂs cab, not from in
front of Hunter.Â  Larry said that the flames started Âkind of underneathÂ and
at the middle of the truck, and they progressed forward.Â  Cope was
cross-examined about another personÂs investigative report in CopeÂs file that
was prepared at the request of the HuntersÂ attorneys, and he acknowledged that
it contained consistent statements from Pam Shields about where she first saw
flames and that the report Âconcluded that the fire appeared to start under
Hunter near the engine area.Â

Â Â Â Â Â Â Â Â Â Â Â  We hold that, even if we
disregard FordÂs expert testimony, the Hunters did not conclusively prove their
design-defect claim as a matter of law.Â  A reasonable jury could have
disbelieved the HuntersÂ expertsÂ theory as to how the fire started, either
because of the disputed testimony among the fact witnesses about where the fire
started, or because they found the HuntersÂ experts or their theory not to be
credible.Â  Also, a reasonable jury could have disbelieved the HuntersÂ expertsÂ
proposed safer alternative designs, or it could have believed that the truck
was not unreasonably dangerous, based on the record as a whole.Â  See
Uniroyal, 977 S.W.2d at 339.Â  In sum, a reasonable jury could have found
that the Hunters did not meet the burden of proof on their design-defect claim.Â 
We also hold that the juryÂs ÂnoÂ answer on the design-defect question is not
so against the great weight and preponderance of the evidence to be clearly
wrong and manifestly unjust.Â  We overrule issues two and three.

Jury Misconduct

Â 

In their first issue, the Hunters claim
that they are entitled to a new trial because of misconduct on the part of one
juror.Â  During voir dire, the panel was told that the case involved a 1999 Ford
F-350 with a 7.3 liter diesel engine.Â  Both sides asked the panel questions about
their ownership of Ford vehicles, including specifically a Ford truck, and
Roscoe Lamb, who was panel member 28, did not respond to those questions.Â  Lamb
was seated as the twelfth juror.

Tracy Johnson, the HuntersÂ attorney,
filed an affidavit with a motion for new trial alleging the following:Â  After
the trial, Johnson telephoned the jurors for feedback.Â  In his conversation
with Lamb, Johnson learned that Lamb owns and drives a Ford truck with the same
7.3 liter diesel engine as the Hunter truck.Â  Lamb would not tell Johnson why
he did not disclose in voir dire that he owned a similar Ford truck.

Johnson then obtained state title and
registration information for Lamb, and those documents show that Lamb owns a 2003
Ford F-250 truck, which Johnson says has a 7.3 liter diesel engine and the same
alleged design defect as the Hunter truck.Â  The state records also showed that
LambÂs wife owns a Ford, and that too was not disclosed in voir dire.

JohnsonÂs affidavit further states that,
during the trial testimony of James Mundo, one of the HuntersÂ experts, Lamb
asked to see a demonstrative metal bracket Â (apparently the one that the
HuntersÂ experts opined cut the battery cable) that Mundo was discussing.Â  The
bracket was passed around to the jurors.Â  (The reporterÂs record reflects this
occurrence, but it does not identify the juror.)Â  According to Johnson, after Lamb
examined the bracket, he Âsat back, took no notes, nor asked to see any other
items.ÂÂ  JohnsonÂs affidavit concludes: ÂHad I been aware of Mr. LambÂs
ownership of a Ford truck with the same defect at issue in the lawsuit, I could
have asked about his bias in favor of Ford and raised a cause challenge if
warranted.Â  Had the challenge not been granted, I would have used one of my
remaining peremptory challenges to excuse him.Â

Among the grounds in the HuntersÂ motion
for new trial was juror misconduct relating to LambÂs alleged concealment.[1]Â 


Rule of Civil Procedure 327 provides:

a. When the ground of a motion for new
trial, supported by affidavit, is misconduct of the jury or of the officer in
charge of them, or because of any communication made to the jury, or that a
juror gave an erroneous or incorrect answer on voir dire examination, the court
shall hear evidence thereof from the jury or others in open court, and may
grant a new trial if such misconduct proved, or the communication made, or the
erroneous or incorrect answer on voir dire examination, be material, and if it
reasonably appears from the evidence both on the hearing of the motion and the
trial of the case and from the record as a whole that injury probably resulted
to the complaining party.

Â 

b. A juror may not testify as to any
matter or statement occurring during the course of the juryÂs deliberations or
to the effect of anything upon his or any other jurorÂs mind or emotions as
influencing him to assent to or dissent from the verdict concerning his mental
processes in connection therewith, except that a juror may testify whether any
outside influence was improperly brought to bear upon any juror.Â  Nor may his
affidavit or evidence of any statement by him concerning a matter about which
he would be precluded from testifying be received for these purposes.

Â 

Tex. R. Civ. P.
327.

Â 

After a hearing, the trial court denied
the motion and, despite the HuntersÂ request, did not make and file findings of
fact and conclusions of law.[2]Â 
The only evidence presented at the hearing was JohnsonÂs affidavit; Lamb did
not testify.Â  See Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362,
370 (Tex. 2000) (noting that juror who allegedly gave incorrect answer during
voir dire to conceal bias could have been called to testify at hearing on
motion for new trial); General Accident Fire & Life Assurr. Corp. v.
Coffman, 326 S.W.2d 287, 291-92 (Tex. Civ. App.ÂWaco 1959, writ refÂd
n.r.e.) (juror testified at hearing on motion for new trial on jurorÂs
concealment of similar injury as plaintiffÂs).

To warrant a new trial for jury
misconduct, the movant must establish (1) that the misconduct occurred, (2) it
was material, and (3) probably caused injury.Â  Rule 327 provides that a trial
court:

Â 

may grant a new trial if ... the
erroneous or incorrect answer on voir dire examination, be material, and if it
reasonably appears from the evidence both on the hearing of the motion and the
trial of the case and from the record as a whole that injury probably resulted
to the complaining party.

Â  

Tex. R. Civ. P. 327(a).Â  Whether misconduct occurred
and caused injury is a question of fact for the trial court.Â  See Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).Â  Absent findings to the contrary, we must
assume that the trial court made all findings in support of its decision to
deny the motion for new trial.Â  See id.

Â 

Golden Eagle, 24 S.W.3d at 372.Â  We review the trial
courtÂs denial of the HuntersÂ motion for new trial on jury misconduct for
abuse of discretion.Â  Pharo, 922 S.W.2d 948-49; Mercado v.
Warner-Lambert Co., 106 S.W.3d 393, 396 (Tex. App.ÂHouston [14th Dist.]
2003, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  We need not decide if juror
Lamb committed jury misconduct because we determine that the Hunters cannot
show that injury probably resulted from the misconduct, if it occurred.

Â Â Â Â Â Â Â Â Â Â Â  To show probable injury,
there must be some indication in the record that the alleged misconduct most
likely caused a juror to vote differently than he Âwould otherwise have done on
one or more issues vital to the judgment.ÂÂ  Mrs. BairdÂs Bread Co. v. Hearn,
157 Tex. 159, 300 S.W.2d 646, 649 (1957).Â  There is no probable injury when Âthe
evidence is such that ... the jury would in all probability have rendered the
same verdict that was rendered here, ...Â Fountain[ v. Ferguson,
441 S.W.2d 506, 508 (Tex. 1969)] (quoting LumbermenÂs LloydÂs v. Loper,
153 Tex. 404, 269 S.W.2d 367 (1954)).

Â 

Redinger v. Living, Inc., 689 S.W.2d 415, 419 (Tex. 1985).Â  Here,
the verdict was unanimous, and there is no evidence that the alleged misconduct
affected the outcome.Â  If someone other than Lamb had been the twelfth juror
and had voted for the HuntersÂ position, the same verdict, albeit 11 to 1
instead of unanimous, would have been rendered.Â  See id.; Williams v.
Viswanathan, 64 S.W.3d 624, 637 (Tex. App.ÂAmarillo 2001, no pet.) (ÂIn this case there was a unanimous verdict. Â Therefore,
even if Jane DoeÂs vote was not counted, there would have been 11 votes to
support the verdict. Reversal is not required by jury misconduct when the
verdict would be supported by the required ten jurorsÂ.) (citing Redinger,
689 S.W.2d at 419); see also Sharpless v. Sim, 209 S.W.3d 825,
828 (Tex. App.ÂDallas 2006, pet. denied) (ÂThere is
also no probable injury because HarrisonÂs vote did not alter the outcome, and
was therefore not vital to the judgment. ÂÂ  But even if Harrison had agreed
with the majority, the final verdict would simply have been 11-1 in favor of
plaintiffs rather than 10-2. Jury misconduct does not require reversal when the
verdict would be supported by ten of the twelve jurors required to render a
verdict.Â) (citing Williams, 64 S.W.3d at 637).

In
Coffman, the authority principally relied on by the Hunters to show
probable injury, fifty years ago we applied a much lighter burden to show
probable injury in a case where the juror testified at the hearing on the
motion for new trial on jury misconduct:

Surely the appellant
had the right to know of each member of the jury panel whether or not he or she
had sustained at any time a back injury in order that he might properly
exercise his challenges for the benefit of his client.Â  It is obvious that no
one could reasonably speculate as to the effect on the ultimate outcome of this
cause had the appellant had an unbiased juror sitting in the place of the
juror, Long.Â  Appellant was entitled to have its cause submitted to twelve men
who were fair and unbiased by previous experience and its attorneyÂs effort to
obtain such treatment for his client was denied through no fault of the
attorney.Â  We are of the view under this undisputed factual situation that no
heavy burden or unreasonable burden should be placed upon defendant to show
probable harm.

Â 

Coffman, 326 S.W.2d at 292.

Â 

We read Coffman as an anomaly
that was decided, as the opinion thrice reiterates, on the Âundisputed factual
situationÂ of the juror, who testified that his own undisclosed similar injury
influenced his vote.Â  See id.Â  It was that Âundisputed factual
situationÂ that led the court in Coffman to distinguish, and thus to not
apply, the otherwise admittedly controlling case law at the time regarding
probable injury.Â  See id. (citing Childers v. Texas EmployersÂ Ins.
AssÂn, 154 Tex. 88, 273 S.W.2d 587 (1954); Thompson v. Quarles, 297
S.W.2d 321 (Tex. Civ. App.ÂGalveston 1956, writ refÂd n.r.e.); and Houston
Belt & Terminal Ry. v. Burmester, 309 S.W.2d 271 (Tex. Civ. App.ÂHouston
1957, writ refÂd n.r.e.)).Â  Thus, we view Coffman as being limited to
its unique facts, and we furthermore doubt that its lighter burden on probable
injury survives Redinger and its progeny, such as Williams and Sharpless.

The Hunters also contend that the excessive
speed in which the jury reached its verdict (forty minutes) shows probable
injury from LambÂs alleged misconduct.Â  They argue in their reply brief:

The juryÂs actions in this case are best
explained as being due to LambÂs concealed bias.Â  This is what is most likely.Â 
There is no way any reasonable jury could have returned a verdict so quickly
that was so against the weight of the evidence without the concealed bias
having caused harm.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The Hunters first cite Carson
v. Texas Pipe Line Co., 59 S.W.2d 328 (Tex. Civ. App.ÂFort Worth 1932, writ
dismÂd), in support of their contention, but we agree with Ford that Carson is factually and legally inapposite.Â  They next cite Reese v. Brittian,
570 S.W.2d 528 (Tex. Civ. App.ÂAmarillo 1978, writ refÂd n.r.e.), which states
that, among other factors, the duration of jury deliberations is a factor to
consider in determining probable harm from jury misconduct.Â  See id. at
533 (citing Jack Pope, The Mental Operations of Jurors, 40 Texas
L. Rev. 849, 865-66 (1962)).Â  The referenced law review article does not
support that proposition; it merely states, without citation to authority, that
the duration of deliberations can be an overt act of jury misconduct.Â  See
Pope, 40 Texas L. Rev. at 865-66.Â  That scrutiny also
applies to the other case relied on by the Hunters.Â  See Trousdale v. Texas & N.O.R. Co., 264 S.W.2d 489, 494-95 (Tex. Civ. App.ÂSan AntonioÂ 1953)
(listing overt acts of misconduct that can be inquired about), affÂd,
154 Tex. 231, 276 S.W.2d 242Â (1955).

No authority supports the HuntersÂ proposition, and moreover, they
additionally would have to have shown a causal linkÂother than pure
speculationÂbetween the alleged misconduct and the speedy deliberations to
establish probable injury.Â  See Redinger, 689 S.W.2d at 419 (Â[t]o show
probable injury, there must be some indication in the record that the alleged
misconduct most likely caused a juror to vote differentlyÂ) (emphasis
added); Doucet v. Owens-Corning Fiberglass Corp., 966 S.W.2d 161, 164 (Tex. App.ÂBeaumont 1998, pet. denied) (ÂWe cannot manufacture injury by supposition or
conjecture.Â).Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Because the trial court
could have determined that no injury probably resulted from the alleged
misconduct, it did not abuse its discretion in denying the HuntersÂ motion for
new trial on jury misconduct.Â  We overrule their first issue.

Having overruled all of the HuntersÂ
issues, we affirm the trial courtÂs judgment.

Â 

Â 

Â 

REX D. DAVIS

Justice

Â Â Â Â Â Â Â Â Â Â Â  

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed November 10, 2009

[CV06]

Â 









[1] The HuntersÂ insinuation is that Lamb
was a Âstealth juror.ÂÂ  A stealth juror is a Âjuror who hides a potentially
disqualifying bias or conflict of interest in order to serve on a jury.Â  A
stealth juror may want to influence the outcome of the trial. ÂÂÂ  Black's Law Dictionary 873 (8th ed.
2004).





[2] The Hunters do not raise as an issue
the trial courtÂs failure to make and file findings and conclusions.Â  The trial
court may file, but is not required to file, findings and conclusions on a
motion for new trial alleging jury misconduct.Â  See Woodward v. Higdon,
643 S.W.2d 470, 471 (Tex. App.ÂWaco 1982, writ refÂd n.r.e.).